## Western Stone Co. v. Whalen.

1. ARREST OF JUDGMENT—*Defective Declaration.*—A motion in arrest of judgment upon the ground of a defective declaration, can not be sustained if there is a good count in the declaration.

2. FELLOW-SERVANTS—*Rule of Determination.*—In order to constitute employes fellow-servants, the relation between them must be such that each, as to the other, by the exercise of ordinary caution, can either prevent or remedy the negligent acts of the other, or protect himself against its consequences.

3. NEGLIGENCE—*Evidence of Reputation of Employe.*—In an action for personal injuries caused by the negligent act of an employe of the defendant, evidence of the general reputation of the employe for carefulness, prudence and skill, is admissible.

4. EVIDENCE OF REPUTATION—*Competency of Witnesses.*—It is not necessary that witnesses speaking to reputation, should themselves be experts in the pursuit to which the reputation relates.

Western Stone Co. v. Whalen.

**Memorandum.**—Action for personal injuries.   Appeal from the Superior Court of Cook County; the Hon. JONAS HUTCHINSON, Judge, presiding.   Heard in this court at the October term, 1893, and affirmed. Opinion filed February 1, 1894.

The statement of the facts is contained in the opinion of the court.

SCHUYLER & KREMER, attorneys for appellant.

DUNCAN & GILBERT, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

The appellant owned three canal boats and a steamboat which were employed in bringing stone along the canal from Lamont to Chicago, the steamboat towing the canal boats.   The appellee was master of one of the canal boats. On the 8th day of May, 1889, the steamboat, with one of the canal boats in tow, passed by the canal boat of which appellee was master, preparatory to taking that also in tow behind the other.   The appellee threw a line to the master of that boat, who fastened his end of it on his boat, and the appellee made three turns of the line around a post on his boat, and in some way, not clearly shown, his right leg was caught in the rope, brought against the post, and so injured that it was afterward necessarily amputated.   For this injury this suit was brought, and the recovery had upon the theory—as counsel seem to agree—that the speed of the steamboat was excessive through the fault of its captain, and that the appellant is in fault in having an incompetent captain.

The declaration contains several counts, two of which charge incompetency of the captain.   It is urged that those counts are not good, and that a motion in arrest of judgment should have been sustained.   But if there be any good count in a declaration, judgment can not be arrested for bad ones.   We considered the subject in United States Rolling Stock Co. v. Chadwick, 35 Ill. App. 474.   It may deserve consideration whether if, upon the record, by answers to special questions, it appears expressly or by necessary infer-

ence, that the verdict is based only upon faulty counts, the rule would apply. It does not so appear here.

The jury did answer "yes" to the questions "was the plaintiff a co-employe with" the captain of the steamboat, and "was he associated with" that captain "and engaged in the same line of business at the time of the injury, namely, making up the tow."

These questions and answers do not bring the appellee and the captain of the canal boat into the category of fellow-servants.

As said in Rolling Mill Co. v. Johnson, 114 Ill. 57, as to fellow-servants "the idea is that the relations between the servants must be such that each, as to the other, by the exercise of ordinary caution, can either prevent or remedy the negligent acts of the other, or protect himself against its consequences."

It may be true that the appellee might have protected himself, but that question belongs to another branch of the case, that is, of due caution and care for himself. He might have refused to throw the line, as May might have abandoned his work in Chicago & Alton R. R. v. May, 10 Ill. 228.

That the captain of the steamboat was in authority as to making the tows, and had given previous notice that he would take the boat of the appellee, seems to be fully proved—as well as that the speed of the steamboat was governed by orders from him to the engineer communicated by signals.

The two captains were co-employes—that is, employed by the same corporation and associated in the same line of transporting stone from Lamont to Chicago. Similar, but not so close, relations exist between the president of a railway and a brakeman on it.

The appellee testified that when he threw the line he expected that, as was usual, the steamer would slow down; that when he saw her coming at such speed, he cast off the line that held his boat to the shore, and not supposing "that any man would do anything else" than stop, he threw the line; that he "didn't have any time to wait. If you wait

you would get left behind, and be sent down to the office."
It is not very apparent to us how the stoppage of the steamboat at the instant that the line was thrown, or afterward, would have checked materially the speed of the canal boat to which the appellee threw the line, in time to do any good. Neither is it clear to us that if the conduct of the captain of the steamboat was careless, that the conduct of the appellee was not equally so. But these were matters for the jury to determine, and little experience is needed to foretell how they would be decided between an unfortunate individual and a presumably wealthy corporation. Yet the verdict must be respected. Pennsylvania Co. v. Versten, 41 Ill. App. 345; Bernstein v. Roth, 44 Ill. App. 226.

It may be that the captain of the steamboat having abundant opportunity for deliberation, and the appellee none, turns the scale in favor of the appellee. Whether he and the captain of the steamboat were fellow-servants is a debatable question; and if they were not, or if the captain of the steamboat was in authority, and the injury to the appellee was in consequence of the orders to the engineer of the steamboat, a case was presented for the consideration of the jury. The most contested question in the case arises upon the admission, over the objection and exception of the appellant, of testimony as to the general reputation of the captain of the steamboat, and that for carefulness, prudence and skill as a captain such reputation was bad.

There being before the jury evidence from which they were to determine whether, on the occasion when the appellee was injured, the captain was or was not careless, and if proved to have been so, the next question being whether the appellant ought to have employed him, the authorities justify the admission of evidence of the reputation. Wood, Master and Servant, Sec. 420; Shearman and Redfield, Neg., Sec. 223; 2 Thompson, Neg., p. 1053–4.

And it is not necessary that witnesses speaking to reputation should themselves be experts in the pursuit to which the reputation relates.

Whether the two counts should have averred notice to the

appellant of the captain's incompetency (2 Thompson, Neg., 1052) is not a question now. Goldberg v. Schrager, 37 Ill. App. 316.

No averment as to how the appellant had obtained notice would be necessary, that being simply a matter of evidence.

The abstract contains between five and six pages of instructions asked by the appellant and refused. It also contains about five pages of instructions given for the appellant, in which the law of the case was stated more favorably to the appellant than could be justified. It also contains twenty-nine special questions for the jury, eighteen of which were given; of the other eleven it is enough to say that such an answer to any one of them as the appellant might desire, would not have been inconsistent with the verdict rendered. Wolff v. Wilson, 46 Ill. App. 381.

To go into detail as to the instructions and questions would take too much space.

No instruction was given for the appellee except the usual useless, but innocuous one, relating to credibility of witnesses and weight of evidence. The judgment is affirmed.